IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

RAY COLGROVE, §
VS. § CIVIL ACTION NO. 9:02-cv-189
EDDIE WILLIAMS, ET AL, §

PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE JUDGE OF SAID COURT:
Comes now Ray Colgrove, Plaintiff in the above styled and numbered cause of action and brings this his OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE. In support thereof, he would show the following;

COLLECTION OF DNA SAMPLES
1.

Plaintiff herein contends that he ahs stated a Fourth Amendment privacy right in relation to Texas Government Code Section 411.148. In absence of a conviction for a predicate offense outlined in Section 411.148, a prisoner retains a right to privacy in relation to DNA testing.
In his Report and Recommendation, Magistrate Judge Harry McKee states that the Fifth Circuit has ruled adversely to Colgrove on this issue. Colgrove contends that the ruling in Velasquez v. Woods, 329 F. 3d 421(5th Cir.2003) is contrary to rulings from other Circuit courts, as well as Supreme Court precedent. The Tenth circuit court of Appeals, in Shaffer v. Saffle, 148 F. 3d 1180, addressed a similar situation as was presented by Colgrove. The difference between this case and Shaffer, is the fact that Mr. Shaffer was convicted of second degree murder in violation of Oklahoma statute Title 21, Section 701.8, which is an enumerated offense to which the DNA database provisions apply. Prisoners like Mr. Shaffer, who were convicted of an enumerated offense and are in custody after July 1, 1996, must provide a sample prior to release. In this case, Colgrove does not meet the lawful provisions of Section 411.148.
In Velasquez, supra, the Fifth Circuit court of Appeals stated that the collection of DNA samples is a minimal intrusion. If the DNA samples were collected by way of saliva and/or urine samplessuch an assertion would pass muster in light of Supreme Court precedent. But with the extraction of an inmates' blood, the intrusion is no longer minimal. In Skinner v. Railway Labor Executives" Ass'n, 489 U.S 602, 616, 109 S. Ct. 1402, 1413, 103 L.Ed. 2d 639(1989), the Court held that the penetrating beneath the skin infringes a reasonable expectation of privacy.
Focusing on the Supreme Court's discussion of the routine and commonplace manner of the blood extraction process minimizes the importance of Schmerber v. California, 384 U.S. 757, 767 86 S. Ct. 1826, 1834, 16 L.Ed. 2d 908(1966), erroneously concluding the scope of the search is a de minimis concern. The Schmerber court considered such an intrusion into bodily integrity to be so significant that it normally would require a warrant supported by probable cause. Because the integrity of an individual's person is a cherished value in our society, searches that invade bodily integrity cannot be executed as mere fishing expeditions to aquire useful evidence. The Supreme Court has consistently ruled in the same vein on this issue. See Chambers v. Maroney, 399 U.S. 42, 51, 90 S. Ct. 1975, 1981, 26 L.Ed. 2d 419(1970); Winston v. Lee, 470 U.S.

753, 760, 105 S. Ct. 1611, 1616, 84 L.Ed. 2d 662(1985). Schmerber itself has drawn the significant constitutional line for searches involving intrusion beyond the body's surface. The Court concluded that such searches require probable cause. Its comment on the commonplace extraction concluded that the intrusion was sufficiently minimal to permit use of non-consensual blood testing when there is probable cause to believe that the test will produce evidence linking the perpetrator to the crime under investigation. In Colgrove's case, there was/is no crime under investigation. There was/is no search for useful evidence which would link Colgrove to any crime being investigated.

Similarly, the Winston, supra, Court recognized that Schmerber's threshold standard was a requirement of probable cause where intrusion into the human body are concerned, which implicates deeprooted expectations of privacy.

Let us complare the DNA collection issue with an inmate's right to be free from strip searches and degrading body inspections. It is settled now that the constitution places limits on a state's right to interfere with a person's bodily integrity, Planned Parenthood v. Casey, ___ U.S. ___, ___,-___, 112 S. Ct. 2791, 2804-08, 120 L.Ed. 2d 674(1992). Some diminution of privacy is of course to be expected in prison. But even so, those who are convicted of criminal offenses do not surrender all of their constitutional rights. Female officers strip searching male inmates, for example. The Supreme Court, as well as the lower courts have routinely held that an inmate has a right to be free of forced strip searches, especially by female officers, absent an emergency. Inmate have a privacy right in relation to the viewing of his naked body, but not in the intrusion into his bodily integrity? An inmate has no right to the private information contained in his blood, such as medical information? Such an assertion deos not comport to Supreme Court rulings, and tramples the Fourth Amendment beyond recognition. Velasquez, supra, attempts to overrule longstanding Supreme Court rulings, adn further opens the door for rogue officials to abuse its newly unlawfully gained state powers, and effectively establishes a Hitler/Saddam Hussein type police state where state officials have no bounds, and no constitutional guarantees to protect citizens targeted by the state.

Colgrove contends that Section 411.148 mirrors the Texas Penal Code. If an inmate ~~xxxxxxxxxxxxxx~~ commits a murder while in prison, he may be subjected to prosecution. Absebt a violation of any enumerate offense stated in the Penal Code, there can be no prosecution. Similarly, Section 411.148 mandates that an inmate who has committed one of the predicate offenses submit to the collection of a DNA sample. State law deos not allow for blamket collection of DNA samples from all inmates. An inmate must be convicted of a predicate offense before the collectionrequirement kicks in.

Colgrove contends that Texas Government Code Section 411.148 is almost identical to the Oklahoma statute challenged in Shaffer v. Saffle, supra. The Oklahoma statute at issue established a DNA offender database in which DNA samples from individuals convicted of specified offenses are collected and maintained for the purpose of identifying and prosecuting perpetrators of "SEX-RELATED CRIMES..." There, Mr. Shaffer was convicted of an offense which was enumerated offense to which the DNA database provisions apply. Here, Colgrove was not convicted of an enumerated offense to which Section 411.148 provisions apply.

## LEGISLATIVE INTENT
## EX POST FACTO VIOLATION

Furthermore, the Texas Legislature specifically expressed its intention in relation to retroactive application of the provisions os Section 411.148. Section 4 of the statute clearly states; "THE CHANGE IN LAW MADE BY THIS ACT TO SECTION 411.148(a), GOVERNMENT CODE, **APPLIES ONLY TO AN INMATE WHO BEGINS SERVING A SENTENCE IN THE INSTITUTIONAL DIVISION OF THE TDCJ ON OR AFTER THE EFFECTIVE DATE OF THIS ACT.**" Emphasis added. In Landgraf v. USI Film Prods., 511 U.S. 244, 114 S. Ct. 1483, 128 L. Ed. 2d 229(1994), the Court addressed a situation in which the Legislature had not stated

its intent with respect to the retroactive application of the provisionsat issue, see Id. at 255-53, 114 S. Ct. 1483. Here, to the contrary, the statute governing the establishment of the DNA database directs that samples are to be taken "ONLY FROM AN INMATE WHO BEGINS SERVING A SENTENCE... ON OR AFTER THE EFFECTIVE DATE OF THIS ACT." Therefore, the application of this statute to Colgrove also violates the Ex Post Facto Clause of the Fourteenth Amendment. Colgrove further contends that the Attorney General, acting as Amicus Curaie, has not shown a legitimate governmental interest in using Colgrove's DNA to investigate and/or prosecute any crime. Colgrove submits that even with his conviction(s), prison officials and/or law enforcement officials cannot simplypick out an inmate, or a group of inmates, and force them to submit to a DNA testing for no reason at all. This is America! Not Nazi Germany, or Saddam Hussein's Iraq, and Magistrate Judge Harry McKee's report and Recommendation owuld turn the TDCJ-ID into such a state.

Due to the foregoing, the Magistrate Judge's Report and Recommendation should be disregarded, and Colgrove's claim allowed to proceed to trial.

## DISCIPLINARY HEARINGS
## DUE PROCESS
## 2.

The Fourteenth Amendment protects liberty interests arising from the Due Proces Clause or created by state law. <u>Hewitt v. Helm</u>, 459 U.S. 460, 466, 103 S. Ct. 864, 868-69, 74 L.Ed. 2d 675(1983). To discover whether state law ahs created a liberty interest, courts must examine closely the language of the relevant statutes and regulations to see whether the state has placed substantive limitations on official discretion. <u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 461, 109 S. Ct. 1904, 104 L.ED. 2d 506(1989). Most commonly, a state fetters official discretion by a two-step process. First, the state establishes substantive predicates to govern official decision-making. These are particularized standards of criteria to guide the state's decisionmakers. Id. Next, the state requires, in explicitlymandatory language, that if the substantive predicates are met, a particular outcome must be found. Id. at 461-64, 109 S. Ct. at 1909-10. Colgrove contends that state regulations/rules/policy fetters official discretion.

Under <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-65, 94 S. Ct. 2963, 2978-79, 41 L.Ed. 2d 935(1974), an inmate should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. 418 U.S. at 566, 94 S. Ct. at 2979. The overarching authority is <u>Wolff</u>, supra, in which the Supreme Court held that prisoners retain certain basic constitutional rights, including the protections of the due process clause. <u>Wolff</u> also holds that a prisoner has a constitutionally protected liberty interset in good time credits, and in enumerates what due process requires when a prison disciplinary hearing **MAY RESULT IN LOSS OF SUCH CREDITS**. Id.at 556-57, 94 S. CT. at 2974-75. An inmate **FACING DISCIPLINARY CHARGES MUST HAVE AN OPPORTUNITY TO MARSHAL THE FACTS AND PREPARE A DEFENSE.**<u>Giano v. Sullivan</u>, 709 F. Supp. 1209, 1214(S.D.N.Y. 1989); <u>Patterson v. Coughlin</u>, 761 F. 2d 886, 890(2d Cir. 1985). The inmate FACING DISCIPLINARY PROCEEDINGS should be allowed to call witnesses and PRESENT DOCUMENTARY EVIDENCE in his defense when permitting him to do so will not jeopardize institutional safety or security. Ordinarily, the right to present evidence is basic to a fair hearing. <u>Wolff</u>, 418 U.S. at 566, 94 S. Ct. at 2979.

Under the caselaw, a prisoner's right to produce evidence in his defense is limited only by the demands of prisoner safety and institutional order, as documented by the sound discretion of the prison authorities. However, the discretion afforded prison officials is not without its limits. The Supreme Court in <u>Wolff</u> recognized that an inmate facing disciplinary must have an opportunity to marshal the facts and

and prepare a defense. See also <u>Patterson v. Coughlin</u>, 761 F. 2d 886, 890(2d Cir. 1985). In this connection, the second circuit held that prison authorities had a constitutional obligation to provide substantial assistance to an inmate in marshaling evidence and presenting a defense. <u>Eng v. Coughlin</u>, 858 F. 2d 889, 897-98(2d Cir. 1988). Moreover, for inmates DISABLED BY CONFINEMENT IN HIGH SECURITY UNITS, THIS ASSISTANCE MUST BE PROVIDED IN GOOD FAITH AND IN THE BEST INTEREST IF THE INMATE. When the inmate is disabled, either by being confined to high securituy units full-time, or transferred from the prison in which the incident(s) occurred, the duty of assistance is greater because the inmate's abilityto help himself is reduced. If the inmate's right to marshal evidence and present a defense is to mean anything, then an inmate so disabled must be provided with some assistance.

In the present case, Colgrove was denied his right to present documentary evidence in his behalf, and denied his right to present a defense to the charge of refusing to abey an order to submit to the extraction of blood for DNA purposes. As the Court held in <u>Wolff</u>, Colgrove, who was facing disciplinary charges, had a right to marshal facts and prepare a defense. Defendant Knight failed and/or refused to gather Colgrove's conviction records which would have shown that he was not required to submit a blood sample for DNA purposes. Furthermore, Defendant Knight failed and/or refused to gather evidence relating to the legislative intent in relation to retroactive application of Section 411.148 of the Texas Government Code.

In his Report and Recommendation, Magistrate Judge McKee stated that the punishment given to Colgrove did not impose an atypical and significant hardship... But Magistrate Judge McKee failed to "EXAMINE CLOSELY THE LANGUAGE OF THE RELEVANT STATUTES AND REGULATIONS TO SEE WHETHER THE STATE HAS PLACED SUBSTANTIVE LIMITATIONS ON OFICIAL DISCRETION." Furthermore, the <u>Wolff</u> Court held that a prisoner has aconstitutionally protected liberty inerest in good time credits, and it enumerates what due process requires when a prison disciplinary hearing **MAY RESULT IN LOSS OF SUCH CREDIT.** Magistrate Judge McKee failed to consider that Colgrove was pressured into giving the blood sample by the THREAT OF MAJOR DISCIPLINARY SANCTIONS INCLUDING THE LOSS OF GOOD TIME CREDITS, LOSS OF GOOD TIME EARNING STATUS, AND WHATEVER OTHER SANCTIONS CAPTAIN HELM DECIDED TO IMPOSE. The Supreme Court has never ruled that courts should look first to the punishment imposed by a prison disciplinary hearing to decide whether or not an inmate was afforded due process at his disciplinary hearing.

Due to the foregoing, Plaintiff herein objects to the Magistrate Judge's Recommendation that his claim be dismissed.

### INDEFINITE CONFINEMENT TO AD. SEG. RETALIATION FOR EXERCISE OF PROTECTED RIGHTS
### 3.

In his report and recommendation Magistrate Judge McKee stated that the Fifth Circuit Court of Appeals addressed an almost identical claim in <u>Pichardo v. Kinker</u>, 73 F. 3d 612(5th Cir. 1996), as the claim presented by Colgrove. This assertion could not be farther from the truth. In <u>Pichardo</u>, the claim was relating to the fact of his confinement in Ad. Seg. when Pichardo was in fact not even a gang member. Colgrove is well aquainted with PIchardo's claims because Colgrove is the individual who assisted Pichardo in filing his complaint, and Colgrove can clearly show the difference between Pichardo's claim, and the claim presented by Colgrove.

Magistrate Judge McKee states that ..."a penological justification exists for Colgrove's confinement in administrative segregation; **HE WAS ONCE A CONFIRMED MEMBER OF A PRISON GANG.**" Only the second half of this sentence is true. Colgrove was once a gang member. Looking to the material presented to this court by the Attorney General's office we see that the Coffield Unit Security Threat Group Office submitted an Attachment B form, recommending that Colgrove be released from Ad. Seg. because the Coffield Unit's investigation showed that he was in fact an ex-gang member. Then we look to the report submitted by a member of the Regional Director's office who claimed that Colgrove was "undercover,"

and an "inactive member" of the Aryan Brotherhood. This individual goes on to state that "...There is **NO EVIDENCE TO SUPPORT THIS**..." With the evidence contained in Colgrove's gang file, Magistrate Judge McKee's assertion that "justification exists" to keep Colgrove segregated cannot be sustained. The evidence in Colgrove's file proves that he is in fact no longer a gang member. What other evidence is there to show that "justification exists" to keep Colgrove segregated, as Magistrate Judge McKee states? There is none! And considering the fact that the Defendants routinely release ex-gang members from Ad. Seg. after unit Security Threat Group officials submit an Attachment B form with a recommendation that they be released, an inference can be drawn that Colgrove is systematically being retaliated against for his legal activities.

The heart of Colgrove's claim relating to his confinement to Ad. Seg. is the fact that he is "indefinitely" confined to Ad. Seg., a claim which Magistrate Judge McKee failed or refused to even address.

Under certain circumstances, silitary confinement may be so onerous htat it constitutes cruel and unusual punishment. See e.g., Hutto v. Finney, 437 U.S. at 686, 98 S. Ct. at 2571; Bono v. Saxbe, 620 F. 2d 609, 613-614(7th Cir. 1980); LaReau v. McDougal, 473 F.2d 974, 978(2d Cir. 1972). As the First Circuit has observed, where solitary confinement is imposed inappropriately or for too long, even the permissable forms of solitary confinement might violate the Eighth Amendment. O'Brien v. Moriarty, 489 F. 2d 941, 944(1st Cir. 1974).

Where prisoners have been confined in isolation for long periods of time, courts have carefully scrutinized the reasons for this extended confinement. Kelly v. Brewer, 525 F. 2d 394, 399-400 (8th Cir. 1975); Jackson v. Amaral, No. 80-219-Z, Slip op. at 9-10 (D.Mass., May 24, 1982); United States ex rel. Bennett v. Prasse, 408 F. Supp. 988, 999 (E.D. Pa. 1976). As the Eighth Circuit declared in Kelly v. Brewer:

> While Administrative Segregation is not inherently unconstitutional, its validity depends on the relative humaneness of the conditions of the segregated confinement and in individual cases upon the existence of a VALID SUBSISTING REASON OR REASONS FOR THE SEGREGATION....It goes without saying htat a prison warden may not constitutionally put an inmate in Administrative Segregation, involving solitary confinement or other rigorous conditions of imprisonment, simply because he dislikes the inmate or desires to punish him for past misconduct. Moreover, it should be emphasized that the reason or reasons for the segregation **MUST NOT ONLY BE VALID AT THE OUTSET BUT MUST CONTINUE TO SUBSIST DURING THE PERIOD OF SEGREGATION.** Emphasis added. Conditions in prison change as they do everywhere else, **AND A REASON FOR ADMINISTRATIVE SEGREGATION OF AN INMTE VALID TODAYMAY NOT NECESSARILY BE VALID SIX MONTHS OR A YEAR IN THE FURURE.** 525 F.2d at 400.

Magistrate Judge McKee has failed to show just what evidence he is relying on to substantiate his assertion that a penological justification exists for Colgrove's segregation. The reason Magistrate Judge McKee fails to point to any type of evidence is because of the fact that the evidence presented in this case points to the other direction. The material submitted by the Attorney General's office cleary states that "...no evidence proves the theory submitted by the Regional Director's office that Colgrove is an Undercover Inactive Member of the Aryan Brotherhood. Magistrate Judge McKee has failed to "carefully scrutinize" the reasons for Colgrove's extended confinement in Ad. Seg. because he is well aware of the fact that there are no valid reasons for it. If Magistrate Judge McKee had ordered an evidentiary hearing which comports with Spears v. McCotter, 766 F. 2d 179(5th Cir. 1985), he would have been able to get a grasp of the true facts of the case instead of relying on material submitted by the Attorney General's office which is unreliable at best, and highly questionable, while disregarding the material

that supports Colgrove's claims, he would easily have seen through the smoke screen put up by the Attorney General's office. Judicial review of prison officials' justification for holding a prisoner in solitary confinement for an extended period of time is necessitated by the debilitating effects ~~ifxanxextended~~ such confinement can have on a prisoner. As the court stated in Morris v. Travisono, 499 F. Supp. 149, 157-59 (D.R.I. 1980), "[E]ven if a person is confined to an air-conditioned suite at the Waldorf Astoria, denial of meaningful human contact for such an extended period may very well cause severe psychological injury." 499 F. Supp. at 160. See also O'Brien v. Brewer, 489 F. 2d at 944("[F]or a person to be cut off markedly from all others is a privation not to be underestimated.")

Colgrove contends that TDCJ-ID policy establishes specific procedures for Security Threat Group validation. These regulations denote what sort of evidence is acceptable at a validation hearing and what procedures must be afforded to an inmate prior to validation. The policy places limitations on the ability of prison officials to validate/confirm an inmate as an STG member and place him in Ad. Seg. Although the policy is not mandatory enough to support a liberty interest under Hewitt v. Helms, 459 U.S. 460, 471-72, 103 S. Ct. 864, 74 L.Ed. 2d 675(1983), they are sufficient to form the basis of a liberty interest under Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418. Sandin directs courts to focus largely, if not entirely, on the nature of the deprivation. Insofar as a Sandin-based liberty interest is conditioned on the existence of some form of state regulation that limits the prison's power to impose ~~restraints~~ constraints, the hurdle is low, and Colgrove easily clears it in this case.

This brings us to the question of whether Colgrove's indefinite confinement in Ad. Seg. constitutes an "atypical and significant hardship in relation to the ordinary incidents of prison life." The Sandin test requires a case-by-case examination of both the conditions of the inmate's confinement and the duration of the deprivation at issue. Sandin, 515 U.S. at 486, 115 S. Ct. 2293; Keenan v. Hall, 83 F. 3d 1318; See Seally v. Giltner, 197 F. 3d 578, 586. In Colgrove's case, the deprivation is extremein both degree and duration. Ad. Seg. in the TDCJ-ID imposes some of the most draconian conditions that can be found in a modern American prison. Colgrove is confined to his cell 24 hours a day, except for roughly ten(10) minutes a day to shower, and five(5) hours a week for recreation, when the shortage of staff allows for recreation to be run. He takes all his meals alone in his cell. He is placed in mechanical restraints, handcuffed behind his back, before exiting his cell to go anywhere. Ad. Seg. reduces human contact to an absolute minimum. Colgrove is not allowed to interact with other inmates or to participate in any educational, vocational, work, or religious activities. His only face-to-face contact is with TDCJ-ID officials. Any visitors to see Colgrove must remain behind a plexiglass window, and he is allowed no contact visitation at all. Magistrate Judge McKee has considered none of this, and has effectively denied Colgrove a fair review of his claims.

Not surprisingly, the severe conditions of Ad. Seg. have adverse psychological consequence See Miller v. Stewart, 231 F. 3d 1248, 1252(9th Cir. 2000); Comer v. Stewart, 215 F. 3d 910, 915; McClary v. Kelly, 6 F. Supp 2d 195, 208. Extended placement in Ad. Seg. causes a detrimental pathological effect on inmates. Extended isolation in Ad. Seg. subjects the inmate to heightened psychological stressors and creates a risk for mental deterioration. See Craig, Haney & Mona Lynch, Regulating Prisons of the Future: A Psychological Analysis of Super-Max and Solitary Confinement, 23 N.Y.U. Rev. L.& Sol. Change 477(1997).

A short stay under severe conditions of Ad. Seg. may not raise due process concerns. But here, Colgrove has been confined to Ad. Seg. for ten(10)years, and four months. This is clearly enough to trigger a liberty interest. See Colon v. Howard, 215 F. 3d 227, 230-32; Shoats v. Horn, 213 F. 3d 140, 143-44. Furthermore, Colgrove will remain in Ad. Seg. indefinitely. The only way Colgrove will be released from Ad. Seg. is to renounce membership in the gang, which he did in October of 1995, and go through the GRAD program, which he has been denied participation in. The reality is that Colgrove will remain in Ad. Seg. for an indefinite, or permanent term, or until he paroles,

or completely discharges his sentence. More likely Colgrove will have to completely discharge his sentence because of the fact that Ad. Seg. inmates are routinely denied parole because of the 'gang' label on them. And the Defendants herein can effectively deny Colgrove an opportunity to gain parole by continuing to retaliate against him for exercising his constitutionally protected right to seek redress from the courts by refusing to remove the gang label from him.

Not only has Colgrove suffered a violation of due process rights, violation of a liberty interest, but he has, and continues to be a victim of retaliation for exercising his right to file grievances and seek redress from the courts. It is a fact that Colgrove has testified against prison officials in one of David Ruiz' jury trials, and he has filed institutional grievances, had his family and/or friends file complaints with the TDCJ-ID Ombudsman's office, as well as with State Representatives and State Senators, and has filed lawsuits in his own behalf as well as in behalf of other inmates. A clear inference can be drawn from the facts in this case to show a long and intentional campaign of retaliation against Colgrove for the exercise of his protected rights. Defendant Cheatham, who has the ultimate authority to release Colgrove from Ad. Seg., has made it plain to Colgrove and his family that as long as he has the authority to keep Colgrove in Ad. Seg., he would do so.

Regarding Magistrate Judge McKee's assertion that there is penological justification for Colgrove's confinement i Ad. Seg., even though he fails to state just what the justification is, it appears that he is referring to the Attorney General's reference to certain incidents which supposedly justify Colgrove's continued confinement in Ad. Seg. The Attorney General mentions an attempted escape. But Ms. O'Rielly submits no disciplinary record, incident report, or judicial resolution relating to any attempted escape. If Ms. O'Rielly is referring to a past conviction for felony escape, in 1984, that case was over 19 years ago! Prison officials cannot use a 19 year old escape as "recent" evidence to substantiate confinement in Ad. Seg. Staff and/or inmate assaults? What evidence has been presented to this court to substantiate such an assertion? Magistrate Judge McKee is relying on smoke and mirrors to support an assertion that there is a penological justification for Colgrove's confinement in Ad. Seg., and the ghosts of alledged violent behavior on the part of Colgrove. Magistrate Judge McKee's recommendation in this case is totally contrary to the evidence, and an arbitrary attempt to deny Colgrove a fair shot at judicial review simply because he is an inmate and has no competent representative to present his claims to the courts. McKee's recommendation defies Supreme Court precedent, and attempts to disregard the actual facts in this case, and chooses not to hold the requisite evidentiary hearing pursuant to <u>Spears v. McCotter</u>, supra, attempting to deny Colgrove his rights simply because he is an inmate.

Due to the foregoing, Colgrove requests that the Report and Recommendation of the Magustrate Judge be set aside, and an evidentiary hearing be oreder, and Colgrove be allowed to proceed with his claims.

Respectfully Submitted,

Ray Colgrove    Pro Se

DONE THIS 16TH DAY OF October, 2003.